## DISTRICT COURT OF THE VIRGIN ISLANDS
## DIVISION OF ST. THOMAS AND ST. JOHN

| | | |
|---|---|---|
| **GREAT LAKES INSURANCE SE,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **Case No. 3:20-cv-0106** |
| **v.** | ) | |
| | ) | **ACTION IN ADMIRALTY** |
| **NO WORRIES, LLC,** | ) | **FOR DECLARATORY RELIEF** |
| | ) | |
| **Defendants.** | ) | |
| | ) | |

### JUDGMENT

**THIS MATTER** is before the Court upon the motion of Great Lakes Insurance SE ("Great Lakes") for default judgment against Defendant No Worries, LLC ("No Worries"). After careful review and consideration of the record, the Court finds as follows:

1. This is a case of admiralty and maritime jurisdiction and is an admiralty and maritime claim within the meaning of Fed. R. Civ. P. 9(h).

2. Great Lakes is an insurance company based in Munich, Germany.

3. No Worries, LLC, is an Alabama limited liability company.

4. The subject motor vessel is M/V No Worries, 2003 31-foot Pursuit with Yamaha twin 250 hp gas engine, ID No. SSUX3159J102 (the "Vessel"). *See* Policy Schedule, ECF No. 1-1 at 2.

5. The relevant marine insurance policy is Policy No. CSRYP/172162 SADS (the "Policy"). *Id.*

6. The Policy was underwritten by Great Lakes through its underwriting agent, Concept Special Risks Ltd. ("Concept").

7. Section 2. of the Policy, the "Insuring Agreement," provides:

   > This is a legally binding insurance contract between you and us, incorporating in full the application form signed by you. We will provide the insurance coverage described in this insuring agreement, in return for payment to us of the premium due and compliance by covered persons with the provisions, conditions and warranties of this insuring agreement.

*See* Commercial Yacht Insuring Agreement, § 2., *id.* at 5

*Great Lakes Insurance SE v. No Worries, LLC*
Case Number 3:20-cv-0106
Order
Page 2 of 4

8.  Section 4. of the Policy provides, in relevant part, as follows: "If a sum insured is shown under Section B of the insuring agreement declaration page, we provide coverage for any sum or sums which you or any other covered person become legally liable to pay and shall pay as a result of ownership or operation of Scheduled Vessel."

9.  Section 4. of the Policy further provides, in relevant part, under "Extension to include Crew Liability":

> Subject to our prior written agreement and your payment of an additional premium, we may at your request extend this insuring agreement to cover any sum or sums you become legally liable to pay and shall pay to hired crew resulting from injury, illness or death occurring whilst in the service of the Scheduled Vessel.

*Id.* § 4. at 9.

10. Section 9.b. of the Policy, under "General Conditions & Warranties," provides: "This insuring agreement incorporates in full your application for insurance and together with any endorsements issued herein, constitutes the entire contract between us. At your request, various provisions of this insuring agreement may be varied by us but only by our prior written agreement." *See id.* at 13, § 9.b.

11. Finally, section 11. of the Policy contains the following choice of law provision:

> **It is hereby agreed that any dispute arising hereunder shall be adjudicated according to well established, entrenched principles and precedents of substantive United States Federal Admiralty law and practice but where no such well established, entrenched precedent exists, this insuring agreement is subject to the substantive laws of the State of New York.**

*See id.* at 18, § 11. (emphasis in original).

12. On or about the night of September 6, 2019, the Vessel, while captained by John Punderson ("Punderson") who was on a personal boat trip at the time, collided with submerged rocks off Lovango Key, seriously damaging the Vessel and causing physical injury to Punderson and the sole passenger on the Vessel at the time, Chelsi Friel (the "Incident").

13. Great Lakes undertook an investigation of the Incident and the salvage of the Vessel.

14. The Vessel was ultimately declared a total loss and Great Lakes paid the Assured for, among other things, the loss of the Vessel under the Hull Coverage provisions of the Policy.

15. Great Lakes also compensated Friel for her injuries under the Third-Party Liability coverage provisions of the Policy.

16. Great Lakes also began to pay Punderson maintenance and cure under the Third-Party Liability coverage provisions of the Policy. *See id.* at 2.

17. Subsequently, in order to better assess Punderson's right to maintenance and cure, Great Lakes undertook an investigation with respect to Punderson's business relationship with the Assured.

18. That investigation revealed that sometime in the latter half of 2018, Martin Williams, the managing member of Assured, agreed to go into the boat chartering business with Punderson.

19. Williams agreed to provide the boat and pay for the dockage and maintenance/repairs in exchange for 80% of the charter revenue.

20. Punderson agreed to provide the marketing and run the charters in exchange for 20% of the charter revenue, plus tips.

21. Punderson did not receive a stipend, salary, or benefits.

22. Although the Assured and Punderson had the joint right of control, as a practical matter, Punderson operated the charter business as he saw fit, with absolutely no control over the operations by Williams and/or the Assured.

23. Both the Assured and Punderson had a pecuniary interest in the boat charter business.

24. Thus, the investigation revealed that Punderson did not have the requisite marine employee-employer relationship necessary to obligate the Assured to pay him maintenance and cure.

25. Rather, the Assured and Punderson had a joint venture relationship.

26. Applying the facts conceded by No Worries to the relevant law reveals that the Assured does not have an obligation to provide Punderson with any additional

maintenance and cure.

27. Accordingly, there is no coverage under the policy at issue for such payments, which entitles Great Lakes to a declaration that it has no liability under the Policy to the Assured and all those claiming from or under it to pay maintenance and cure to John Punderson III.

28. On October 28, 2020, Great Lakes filed the captioned action against No Worries.

29. No Worries was served with a copy of the Summons and Complaint in this matter on December 14, 2020. (ECF No. 4 at 1.)

30. On May 26, 2021, default was entered against No Worries for its failure to appear, answer, respond, or otherwise defend this action within the time limited by law.

31. No Worries is neither an infant nor an incompetent person and is not serving in any branch of the U.S. military.

32. According, Great Lakes is entitled to a default judgment against No Worries for the relief sought in its Complaint.

Now therefore, on motion of Plaintiff Great Lakes for default judgment against Defendant No Worries, it is hereby

**ORDERED** that, pursuant to Fed. R. Civ. P. 55(b)(2), Great Lakes' Motion for Default Judgment, ECF No. 8, is **GRANTED**; it is further

**ORDERED, ADJUDGED, AND DECREED** that Great Lakes is awarded final judgment against the Defendant, declaring that there is no coverage under the Policy for maintenance and cure payments to John Punderson III, and that Great Lakes may properly deny all such claims against the Policy; it is further

**ORDERED, ADJUDGED, AND DECREED** that Great Lakes has no liability under the Policy to No Worries, LLC, and to all those claiming from and under it, for maintenance and cure payments to John Punderson III; and it is further

**ORDERED** that the Clerk of Court shall **CLOSE** this case.

**Dated:** January 6, 2022

*/s/ Robert A. Molloy*
**ROBERT A. MOLLOY**
**Chief Judge**